IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICK ANTHONY MCKINLEY, | § § § | |
| *Plaintiff*, | § § | 5-20-CV-00703-FB-RBF |
| vs. | § § § | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY[1]; | § § § § | |
| *Defendant*. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff Patrick Anthony McKinley's request for judicial review of the administrative denial of his application for disability-insurance benefits under Title II of the Social Security Act. This action was referred for a report and recommendation, pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi—the current Acting Commissioner of the Social Security Administration—for named Defendant Andrew Saul.

As discussed further below, the Court recommends that the Administrative Law Judge's ("ALJ") decision be **REVERSED** and that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## Factual and Procedural Background

Plaintiff McKinley filed his application for disability-insurance benefits on or around February 7, 2018,[2] alleging a disability onset date of June 23, 2013. *See* Tr. 13. McKinley was honorably discharged from the U.S. Army, with a VA disability rating of 70%. *See* Tr. 166, 174. He alleged that the following disabilities rendered him disabled: depression, anxiety disorder, sleep apnea, high blood pressure, and diabetes. *See id.* 189.

McKinley's claims were initially denied on May 8, 2018, *id.* 55-63, and once again on June 24, 2018, following his request for reconsideration, *id.* 64-72. McKinley then requested and received an administrative hearing. *Id.* 87. McKinley and his attorney attended the hearing on January 22, 2019, at which McKinley and the vocational expert testified. *Id.* 27-54.

After conducting a hearing, the ALJ denied McKinley's claim for disability benefits. *Id.* 13-29. Before applying the five-step sequential analysis required by the regulations, the ALJ observed that McKinley had filed a prior application for disability insurance benefits on April 23, 2014, also alleging disability since January 23, 2013. *Id.* 13. The claim, however, was initially denied on August 18, 2014, and McKinley didn't request reconsideration of the determination. *Id.* Accordingly, applying principles of res judicata, the ALJ determined that the relevant period for McKinley's claim was limited to August 19, 2014—the date following the previously unchallenged initial determination—through December 31, 2014—McKinley's date of last

---

[2] McKinley's Application for Disability Insurance Benefits, *id.* 151-52, states that he completed his application on February 8, 2018. This discrepancy is not material here.

insured. *Id.* 14. Moving to the sequential analysis, the ALJ found at step one that McKinley hadn't engaged in substantial gainful activity during the period from August 19, 2014, through the date of last insured, December 31, 2014. *Id.* 16. At step two, the ALJ determined that none of McKinley's alleged impairments either singly or in combination "significantly limited" his ability to perform basic work-related activities for 12 consecutive months during the relevant time period. *See id.* 16-19. For this reason, the ALJ determined that McKinley didn't have a severe impairment or combination of impairments. *See id.* The ALJ therefore concluded the analysis at step two, determining that McKinley wasn't under a disability during the relevant period. *See id.*

The Appeals Council denied McKinley's subsequent request for review of the ALJ's finding. *Id.* 1-6. After exhausting all available administrative remedies, McKinley timely filed suit for judicial review. Dkt. No. 1.

## Analysis

McKinley's brief raises four interrelated arguments concerning the ALJ's non-severity finding.[3] McKinley argues, first, that the ALJ didn't properly evaluate Licensed Social Worker Howard Walker's alleged opinion in accordance with 20 C.F.R. § 404.1520c. Second, McKinley argues that the ALJ impermissibly played doctor and substituted his lay opinion for Walker's. Third, McKinley claims the ALJ failed to fully and fairly develop the record before disregarding McKinley's claim at step two. In support, McKinley notes there are almost no treatment notes pertaining to the relevant period. Fourth, McKinley argues that the ALJ's finding that his conditions were well-controlled with medication is unsupported by the record and that it is in fact impossible to prove this point one way or another without further record development.

---

[3] McKinley also claims that the ALJ's residual-functional-capacity determination isn't supported by substantial evidence. But, as noted, the ALJ never proceeded past step two of the sequential analysis. Accordingly, there's no residual-functional-capacity determination to review.

As discussed further below, McKinley's first two arguments lack merit. The relevant statement provided by Walker wasn't a "medical opinion," as that term is defined by the regulations. Accordingly, the ALJ didn't err by failing to analyze the statement in accordance with 20 C.F.R. § 404.1520c or by allegedly substituting a lay opinion for this purported "medical opinion." But the ALJ's explanation for finding McKinley's impairments non-severe doesn't jibe with the scant record or binding case law. This error is not harmless, as it resulted in the ALJ prematurely terminating the sequential analysis. Remand for further consideration is therefore required.

### A.    Walker's April 9, 2018, Letter Wasn't a Medical Opinion Subject to 20 C.F.R. § 404.1520c.

There is a new Social Security Administration rule to govern medical opinions for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because McKinley filed his application for disability insurance benefits in early 2018, the new rule applies. According to the new rule, the Commissioner is no longer required to defer, or give any specific evidentiary weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner ought to consider all medical opinions and prior administrative medical findings using the specific factors outlined in the rule, the most important of which are the supportability and consistency of the opinion. *Id.* at § 404.1520c(b)(2).

As mentioned, McKinley disputes the ALJ's handling of a statement from social worker Walker, which McKinley labels a "medical opinion." Accordingly, McKinley urges that the ALJ reversibly erred by failing to address the supportability and consistency of Walker's April 9, 2018, statement, which provides in relevant part as follows:

> I have been seeing Mr. McKinley since February of 2013 when he presented to me as a referral from his PCP for being depressed and anxious. I began to see him in individual as well as group therapy and he continues to see me at this time. He has been declared permanently and totally disabled by the Veterans Affairs. He is not

>able to work at all and is on a fixed income and is also a single parent of his two young daughters. . . He has a number of medical as well as mental health diagnosis that I will list. His mental health diagnosis is Major Depression Disorder-Recurrent-Moderate to severe and Generalized Anxiety Disorder requiring him to take anti-depressants for that daily and also meds to help him sleep. He also suffers from Diabetes Type 2, Hypertension Chronic, Chronic Lower Back Disorder, Sleep Apnea, Chronic headaches, Pep-C, Osteoarthritis, Coronary Artery Disease and High Cholesterol. He takes meds of [sic] most of these conditions on a regular basis to maintain his stability and to be able to function. He is on a fixed income but manages his money well and is able to make his bills with little or nothing left over.

Tr. 792.

An opinion or conclusion that a claimant is disabled or unable to work is a legal conclusion reserved for the Commissioner and, hence, the ALJ doesn't need to "justify" a decision to give little weight to it. *See Miller v. Barnhart*, 211 Fed. App'x 303, 305 (5th Cir. 2006) (finding that even under the so-called treating-physician rule, the ALJ need not analyze an opinion that a claimant is disabled or unable to work). McKinley's brief focuses on Walker's statement that McKinley suffered from moderate to severe generalized anxiety disorder. *See* Pl. Br. at 7. This statement—according to McKinley—warranted a § 404.1520c analysis. McKinley is mistaken, however, because the statement is not a "medical opinion" under the regulations.

Pursuant to the revised regulations, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Statements from a healthcare provider that simply describe a claimant's diagnoses or make a judgment regarding their severity, such as the statement at issue, do not fall within this definition. *See* 20 C.F.R. § 404.1513(a)(2), (3) (labelling as "other medical evidence" "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"). Instead, such statements

constitute "other medical evidence" and need not be analyzed necessarily pursuant to the § 404.1520c factors. *See* 20 C.F.R. § 404.1520c(a) (requiring "medical opinions" to be analyzed using the factors listed in paragraphs (c)(1) through (c)(5) as appropriate). Further, because Walker's statement isn't a medical opinion, the ALJ can't be faulted for allegedly substituting a lay opinion in place of a medical one.

### B. The Record Lacks Any Treating Records from Social Worker Walker.

Each side faults the other for the absence of treating records pertaining to the relevant period. McKinley invokes the principle that "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). In other words, "[t]he function of the ALJ is to not merely to sit and listen, nor is he [or she] appointed to process cases on an administrative assembly line." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). And McKinley urges that when an ALJ "fails in that duty, [the ALJ] does not have . . . sufficient facts on which to make an informed decision. Consequently," says McKinley's argument, "[the] decision is not supported by substantial evidence." *Id.*; *see also Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). The Commissioner responds by noting that, typically, the duty to obtain medical records lies with the claimant. *Gonzalez v. Barnhart*, 51 Fed. App'x 484 (5th Cir. 2002). Moreover, in its efforts to develop the record, the Commissioner explains that the Agency made two attempts to obtain McKinley's VA medical records during the relevant period, and the ALJ even admitted additional evidence submitted less than five business days before the hearing date. *See* Comm'r Br. at 7-8.

This isn't a case where McKinley requested assistance from the ALJ in obtaining the requested records or even advised the ALJ at the hearing that the record wasn't yet complete.[4] And

---

[4] *Cf.*, *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981) ("[O]nce the Social Security Administration received Thornton's letters requesting assistance in obtaining specific medical and

as the Commissioner correctly points out, it is not the ALJ's duty to act as a claimant's advocate. *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (ALJ's "basic obligation" to develop the record "is not a panacea for claimants"). The burden to demonstrate a disability is always on the claimant. *See Winston ex rel. D.F. v. Astrue*, 341 Fed. App'x 995, 997 (5th Cir. 2009). Accordingly, at some point, an ALJ must render a decision based on the available evidence. *See id.* At the same time, the ALJ never questioned either McKinley or his counsel at the hearing regarding the noticeable absence of records pertaining to the relevant period, nor did the ALJ even briefly inquire whether the record was—in McKinley and his counsel's opinion—complete. *See Sun*, 793 F.3d at 509 ("[T]he court often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information necessary to make a disability determination."); *Cf. Hernandez v. Astrue*, 269 Fed. App'x 511, 515 (5th Cir. 2008) (ALJ need not further develop the record and may proceed to a decision if there is sufficient information in the record to support a reasonably informed decision).

Notably, the record doesn't include *any* treatment records from Walker, notwithstanding Walker's April 9, 2018, statement that he treated McKinley since February of 2013. And as McKinley's brief observes, the majority of the medical evidence of record concerns treatment that occurred outside the relevant period under consideration. The paucity of medical information in the record is troubling, although it is not the basis upon which the Court recommends remand.

---

psychological records, the administrative process should not have proceeded to a final decision without either some assurance from Thornton that she no longer sought to present the records, or notice from the Social Security Administration that it would not obtain the records and that Thornton would have ample time to acquire the records herself and file them with the ALJ for consideration."); *Harris v. Massanari*, No. CIV. A. 00-3105, 2002 WL 10466, at *3 (E.D. La. Jan. 3, 2002), *opinion clarified on denial of reconsideration sub nom.*, 2002 WL 1066747 (E.D. La. May 28, 2002) (ALJ failed to fully and fairly develop the record by not subpoenaing the records of plaintiff's treating physician where counsel advised the ALJ that he was unsuccessful in obtaining the records).

## C.     The ALJ Erred at Step Two.

Other aspects of the ALJ's ruling, however, warrant remand. In particular, the ALJ's explanation for the non-severity ruling is flawed. It is of course the ALJ's duty to explain his or her conclusions, and the Court must hold the ALJ to the justifications and explanations the ALJ provides. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."). And, as noted, the ALJ's decision must be sufficiently informed by record evidence. *See Kane*, 731 F.2d at 1219 (noting ALJ must have before him or her sufficient facts to make an informed decision); *Sun*, 793 F.3d at 509 (noting ALJ's duty to develop "all relevant facts").

In determining that McKinley's impairments weren't severe, the ALJ reasoned that there were "no objective findings that [McKinley's hypertension and depression] were not well controlled with medication." Tr. 18. Specifically, the ALJ observed there aren't "any progress notes from SW [Social Worker] Walker, [McKinley's] psychiatrist or his primary care provider to show that [McKinley's] medications did not provide improvement and stabilization of [McKinley's] depression or hypertension." *Id.* It's somewhat odd that the ALJ focused on a lack of progress notes to indicate that McKinley's medication was falling short in controlling his impairments, rather than highlighting evidence showing the medication was working to treat the impairments. The ALJ's approach here seems to imply a presumption that medication always fully treats any condition, even in the absence of any objective medical evidence noting, for example, that symptoms are fully addressed by medication. An "informed decision" should favor citing record evidence in preference to noting the absence of it, which can look more like supposition and guesswork than informed decision-making. *Cf. James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986) ("When the record indicates that hypertension can be controlled with medication, the hypertension is not disabling."). Moreover, the ALJ's rationale implies that the record included

8

some progress notes from Social Worker Walker. It did not. And if the ALJ's reasoning were valid, it would also seem to support finding that all of McKinley's impairments were adequately addressed by any other possible treatment mentioned or contemplated in the record; there are after all no progress notes reflecting that any other treatment didn't totally address his impairments either.

In any event, the ALJ also pointed to McKinley's active participation in caring for his two children and service at church as evidence that McKinley was no more than mildly limited in any of the four broad areas of mental functioning known as the "paragraph B" criteria. *Id.* Finally, the ALJ cited McKinley's testimony that explained (1) his bouts of dizziness subsided after about an hour, with the help of a blood-pressure pill;[5] and (2) due to his depression, McKinley would mostly stay in the house and only talk with neighbors prior to December 13, 2014. *See id.* at 17.

Here, the Court cannot ignore the fact that in discussing these matters the ALJ at step two applied an incorrect severity standard. *See Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985) ("Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration."). The ALJ articulated the severity standard as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.

Tr. 15 (citing 20 C.F.R. § 404.1522, SSRs 95-28 and 16-3p). Applying this standard, the ALJ concluded that McKinley didn't have a severe impairment or combination of impairments because his impairments didn't "significantly limit" his ability to perform basic work-related activities. *Id.* 17-19.

---

[5] Here, for example, the ALJ noted how record evidence demonstrated that medication addressed a complaint.

Under Fifth Circuit precedent, "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted); *see also Jones v. Astrue*, 821 F. Supp. 2d 842, 849 (N.D. Tex. 2011) (interpreting *Stone*). The ALJ's non-severity analysis, however, allows interference with work-related activities so long as the interference isn't "significantly" limiting. Accordingly, the ALJ's failure to analyze the severity of McKinley's impairments under the correct standard constitutes legal error. *See Stone*, 752 F.2d at 1101; *see also Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992).

### D.     The Error Wasn't Harmless.

The ALJ's error prejudiced McKinley, warranting remand. First, based on the rationale provided by the ALJ, the Court is unable to conclude that substantial evidence supports the ALJ's non-severity decision. *See Stone*, 752 F.2d at 1106; *cf. Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (substantial evidence supported ALJ's non-severity finding notwithstanding the ALJ's failure to identify the correct legal standard). What an ALJ says is important, and the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Walker's statement that McKinley took medication "on a regular basis to maintain his stability and to be able to function" isn't by itself substantial evidence that the medication fully addressed all of McKinley's impairments such that no impairment could be considered severe. *See Stone*, 752 F.2d at 1101.

Moreover, although the Court is not charged with re-weighing the evidence, McKinley likely has met the required *de minimis* showing to establish that at least his hypertension was severe

enough to interfere with his ability to work—at least based on the present record. [6] *See Stone*, 752 F.2d at 1101; *see also Sanders v. Astrue*, No. CIVA 307CV1827-G(BH), 2008 WL 4211146, at *8 (N.D. Tex. Sept. 12, 2008) ("given the low bar for the establishment of a severe impairment, Plaintiff presented some evidence that could support a finding of depression as a severe impairment"). According to McKinley, his dizziness was triggered by any bending, stooping, or lifting. *See* Tr. 29-30. Although McKinley conceded that blood pressure medication would typically resolve the issue, he also testified that it took a "good hour or so" for the medication to kick-in. *See id.* McKinley also explained that the dizziness would resume if he again attempted to exert himself in a similar manner. *See id.* Neither the ALJ's decision nor the Commissioner's briefing cites any record evidence to reasonably call into question McKinley's claims. *See, e.g.*, *Parker v. Comm'r of the Soc. Sec.*, No. 12-00557-BAJ-RLB, 2014 WL 1239776, at *6 (M.D. La. Mar. 25, 2014) ("Where a claimant's impairments limit their ability to perform work at a certain level of exertion, courts have recognized that the *de minimis* burden required at step 2 is met.").[7]

This is not to say that McKinley's impairments are necessarily sufficiently disabling to award benefits. The record as it stands is scant. But this isn't a case where the harm from the ALJ's step two analysis could've been remedied by proceeding through the rest of the sequential process. The ALJ here terminated the analysis at step two with a finding of non-disability based on an

---

[6] The record reflects that McKinley's depression was in "partial remission" during the relevant time period, *see* Tr. 287-88, and McKinley testified that it was "kind of mild" during the relevant period, *see id.* 32.

[7] The fact that McKinley has full custody of his children isn't a sufficient basis to find his impairments non-severe, particularly where the record reflects that the children's mother is on drugs, and McKinley receives assistance from others in caring for them. *See* Tr. 41; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (rejecting the great significance ALJ placed on the fact the claimant was able to care for her two small children and noting that "Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts").

incorrect non-severity analysis. Remand is therefore required. *See, e.g., Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) (remand appropriate "where there is no indication the ALJ applied the correct [severity] standard.").

### E. Recommended Remand Instructions

To the extent the District Court adopts this Report and Recommendation, it is recommended that the case be remanded to the Commissioner to fully consider whether McKinley had one or more severe impairments during the relevant time period as that term was interpreted by the Fifth Circuit in *Stone*, 752 F.2d at 1101. To the extent appropriate, the ALJ should then continue with the remaining steps of the sequential evaluation process and re-evaluate all the medical evidence to determine whether, and to what extent, a residual-functional-capacity assessment is appropriate. Before reaching a decision, the ALJ should ensure that he has sufficient facts regarding McKinley's impairments and work-related abilities during the relevant period to support an informed decision. *See Kane*, 731 F.2d at 1219; *Sun*, 793 F.3d at 509. If necessary, the ALJ should hold another hearing and obtain new vocational expert testimony.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that the ALJ decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and this case is **REMANDED** to the Commissioner for further consideration consistent with the instructions provided herein.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a

"filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 9th day of August, 2021.

                                              RICHARD B. FARRER
                                              UNITED STATES MAGISTRATE JUDGE